UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

DELORANCE BROWN,

        Defendant.
_____/

Case No: 24-20227

F. Kay Behm

U.S. District Judge

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO DISMISS INDICTMENT (ECF No. 14)**

**I.   PROCEDURAL HISTORY**

This matter is before the court on Defendant Delorance Brown's Motion to Dismiss Indictment.  (ECF No. 14).  On May 1, 2024, Brown was indicted on one count of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1) and § 924(e), commonly referred to as a "felon in possession" law.  (ECF No. 1). Brown filed his motion to dismiss the indictment on July 30, 2024.  (ECF No. 14). Central to Brown's motion is whether § 922(g)(1) is constitutional under the U.S. Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022).  While this motion was pending, the Sixth Circuit considered that question and determined that § 922(g)(1) "is constitutional on its face and as applied to dangerous people."  *United States v. Williams*, 113 F.4th

1

637, 662 (6th Cir. 2024).  In light of the Sixth Circuit's holding in *Williams*, the parties submitted supplemental briefing on Brown's motion.  (ECF Nos. 24, 25, 26).  The court held a hearing on the motion on December 17, 2024, and this opinion follows.

For the reasons described below, the court finds that Brown may lawfully be prohibited from possessing firearms and **DENIES** Defendant's Motion to Dismiss Indictment

## II.     FACTUAL BACKGROUND

Brown is before the court on a charge of felon in possession and challenges the constitutionality of those charges facially, and as applied to him.  Due to his prior felony convictions, Brown's alleged possession of a handgun violates 18 U.S.C. § 922(g)(1).

Under the Sixth Circuit's decision in *Williams,* Brown's prior convictions are relevant to his as-applied challenge to § 922(g)(1).  Brown's record reflects multiple convictions and charges for illegal possession of a firearm or being in a vehicle where firearms were seized.   (ECF No. 25, PageID.93).  Three of those incidents resulted in conviction, one resulted in a probation violation, and the last is the current charge Brown faces here.  *Id*.

In 2018, when he was a juvenile, Brown was arrested for possessing 11 individually wrapped rocks of crack cocaine.  Brown was charged with possession

2

with intent to deliver on school property/library. Brown was placed on juvenile consent calendar probation for possession of a controlled substance. (*United States v. Brown*, Case No. 22-cr-20659, PSR, ECF No. 19, ¶ 30; *see also* ECF No. 27). Four months after being placed on consent calendar probation, Brown's probation was revoked after he was arrested for new criminal conduct. Brown's first relevant conviction occurred in 2019, when he was arrested for carrying a concealed weapon and assaulting/resisting/obstructing police. Brown ran from the police who attempted to subdue Brown with two taser deployments. As Brown continued to run from the police, he discarded a semi-automatic pistol. The police later found Brown hiding under a vehicle. Brown was charged with carrying a concealed weapon and two counts of assaulting/resisting/obstructing police. Brown pleaded guilty as charged and was sentenced under the Holmes Youthful Trainee Act (HYTA) to 24 months of probation. *Id*. at ¶ 31. Brown violated his probation on two occasions, both of which involved firearms. Following Brown's second probation violation adjudication, his probation and HYTA status were revoked. *Id*.

     Brown's second relevant conviction occurred in January of 2022. While on HYTA probation, Brown was arrested for illegally possessing a firearm. Police were dispatched to a residence in Flint for a domestic violence complaint involving a weapon. The 911 caller advised dispatch that Brown assaulted her

3

daughter and that he was armed with a "long gun chopper and pointing it at people." *Id*. at ¶ 10.  When police arrived on scene, Brown ran from the police. As the police chased after Brown, they saw the 911 caller's daughter straddling a railing over the Flint River yelling that she was going to jump. *Id*. at ¶ 11.  The police subsequently arrested Brown a short distance away.  The police seized a magazine from Brown's pocket and short-barrel SKS-style semi-automatic rifle that he discarded while running from the police. *Id*. at ¶ 12, *see also United States v. Brown*, Case No. 22-cr-20659, ECF No. 17, Plea Agreement, PageID.37.  The rifle had a spent casing in the chamber and both the barrel and stock of the rifle had been sawed off. *Id*. at ¶ 12.  The 911 caller's daughter denied that Brown assaulted her or pointed the gun at her, however, the 911 caller observed a fresh bullet hole in the floor of the upstairs bedroom that exited through the ceiling of the living room.  With the fresh bullet hole and a spent casing in Brown's rifle, the government says that it is reasonable to conclude Brown discharged the rifle.  Police later photographed the bullet holes.  (Flint Police Department, Complaint No. 2022-00007476).  Brown was later indicted for possession of an unregistered short barrel rifle.  He pleaded guilty and was sentenced to 12 months and one day imprisonment.  (*United States v. Brown*, Case No. 22-cr-20659, ECF No. 25, Judgment, PageID.143).

4

Brown's third relevant conviction occurred in August of 2022, when he was arrested for possessing a .40 caliber pistol equipped with an extended magazine. Brown pleaded guilty to reckless use of a firearm.  (*United States v. Brown*, Case No. 22-cr-20659, PSR, ECF No. 19, ¶ 32).

## III.  STANDARD OF REVIEW

In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment codified a pre-existing "individual right."  554 U.S. 570, 579-81, 592 (2008).  This right protects the ability to keep, for "lawful purposes," the kinds of weapons in common usage, like those used for self-defense.  *Id.* at 625, 627 (quotation omitted).  *Heller* cautioned that nothing in its opinion "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," like § 922(g)(1).  *Id.* at 626.  Thus even after *Heller*, many courts of appeals, including the Sixth Circuit, refused to hear as-applied challenges to § 922(g)(1).  *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010).  The U.S. Supreme Court upended that tradition in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022).  *Bruen* required the government to show that a regulation's infringement on a particular citizen's Second Amendment right was "consistent with this Nation's historical tradition of firearm regulation."  *Id.* at 17.  The scope of that inquiry remained unclear.  *See United States v. Rahimi*, 144 S. Ct. 1889, 1927 n.1 (2024) (Jackson, J., concurring)

(collecting cases).  The Supreme Court then attempted to clarify *Bruen*'s holding in *United States v. Rahimi*, 144 S. Ct. 1889 (2024).  *Rahimi* emphasized that firearm regulations need not have a historical "twin" to be valid.  *Id.* at 1898 (quoting *Bruen*, 597 U.S. at 30).  Instead, the relevant inquiry is whether the challenged regulation is consistent with the "principles that underpin our regulatory tradition."  *Id*.  In light of *Bruen* and *Rahimi*, the Sixth Circuit considered whether § 922(g)(1), a federal "felon in possession" law, remained a constitutional mechanism for disarming people in *United States v. Williams*.  *See* 113 F.4th 637 (6th Cir. 2024).  *Williams* is a published decision in which the court concluded that 18 U.S.C. § 922(g)(1) is constitutional on its face and as applied to "dangerous" people.  *Id.* at 663.  It also set forth the standard for determining whether a person convicted of a felony is "dangerous" and can be disarmed.  "When evaluating a defendant's dangerousness, a court may consider a defendant's entire criminal record," "as well as other judicially noticeable information."  *Id.* at 660.

Under the *Williams* framework, criminal convictions can broadly be separated into three categories.  The first category encompasses crimes against a person such as murder, rape, assault, and robbery, which speak "directly to whether an individual is dangerous."  *Id.* at 658.  In this category, the burden of proof to show non-dangerousness is "extremely heavy."  *Id.* ("[V]iolent crimes are

6

at least strong evidence that an individual is dangerous, if not totally dispositive on the question."). The second category encompasses crimes like drug trafficking or burglary. "[T]hese crimes put someone's safety at risk, and thus, justify a finding of danger." *Id.* at 659. The final category includes crimes like mail fraud or making false statements. Often, such crimes cause no physical harm to another person or the community, and the *Williams* panel indicated that a defendant's burden is low because district courts should generally find that these crimes "don't make a person dangerous." *Id.*[1] Notably, prior convictions can be accepted "without an evidentiary hearing or jury fact finding" and that a presentence report whose contents have not been objected to can also be so considered. *Id*. at 662 (citing *Almendarez-Torres v. United States*, 523 U.S. 224, 228–39 (1998)).

---

[1] A note on phrasing: this court attempts to use, where possible, language that centers the dangerousness of the crime and acts at issue. Convictions based on crimes which put another person's safety at risk are valid bases for disarming someone under § 922(g)(1). *Williams*, at *40-41. As the Supreme Court put it: "Our tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *United States v. Rahimi*, 144 S. Ct. 1889, 1902 (2024); *see also United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) (holding that the offense of drug trafficking itself poses a danger to the community).

## IV.  ANALYSIS

### A.  Facial Challenge

Defendant argues that the *Williams* improperly forecloses facial challenges to § 922(g)(1).  Additionally, Brown argues that the reasoning *Williams* used to conclude that "dangerous people" can be permanently disarmed is flawed.  And lastly, Brown argues that *Williams* itself creates two due process problems, in that (1) § 922(g)(1) is unconstitutional as applied to non-dangerous felons, making the statute overbroad and facially unconstitutional; and (2) the "dangerous person" test is void for vagueness.

This court is bound by Williams' clear holding that facial challenges to § 922(g)(1) are foreclosed and even if this court disagreed with *Williams*, the result cannot be changed.  Indeed, "mere disagreement with the *Williams* analysis is not sufficient to compel this Court to abandon binding precedent."  *United States v. Sutton*, 2024 WL 4817441, at *5 (S.D. Ohio Nov. 18, 2024) (citing *United States v. Thomas-Mathews*, 81 F.4th 530, 540 n.3 (6th Cir. 2023) (a Sixth Circuit decision "remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or [the Sixth Circuit] sitting en banc overrules the prior decision") (internal citations and quotation marks omitted); *Kimble v. Entm't, LLC*, 135 S. Ct. 2401, 2409 (2015)

8

("[A]n argument that we got something wrong—even a good argument to that effect—cannot by itself justify scrapping settled precedent.")).

Further, to the extent that Brown contends that *Williams* itself is overbroad or void for vagueness, these are doctrines that apply to criminal statutes, not to interpretations proffered by a court. *See e.g.*, *United States v. Jennings*, --- F.Supp.3d ----; 2024 WL 4560602, at *6 (E.D. Mich Oct. 24, 2024) (Berg, J.) (rejecting argument that overbreadth and void for vagueness doctrines could be applied to *Williams*' holdings). Accordingly, those doctrines will not be further considered here. *Williams* teaches that facial challenges to § 922(g)(1) are foreclosed and in the court's view, nothing in Brown's supporting brief suggests that this court can or should determine otherwise.

B.  As-Applied Challenge

Brown has multiple felony weapons convictions that are relevant to the instant motion. Brown's firearm related convictions include: (1) carrying a concealed weapon; (2) reckless use of a firearm; and (3) possession of an unregistered short barrel rifle. The Government points out that in Michigan, carrying a concealed weapon is categorized as a crime against public safety. *See* Mich. Comp. Laws § 777.16m. Further, a conviction under Michigan's reckless use of a firearm statute requires the reckless use of a firearm "without due caution and circumspection for the rights, safety or property of others." *See* Mich. Comp.

9

Laws § 752.863a. Finally, the government argues that possession of short barrel rifle is a "crime of violence" under the U.S. Sentencing Guidelines.

On the other hand, Brown argues that none of his adult firearm convictions involve actual violence. The first conviction was merely for possession. And while the second conviction was for reckless use of a firearm, he was pulled over for a traffic stop and found in possession of a firearm; he says there was not actual use of the weapon involved. As to the third conviction, his girlfriend denied that there was any domestic assault or that he threatened her with the gun. Accordingly, unlike the defendant in *Williams*, who was convicted of two aggravated robberies committed with firearms, attempted murder of police officer, and possession of a gun as a felon, Brown maintains that he is not a "dangerous person." Brown also points to his youthful offender status at the time of some of his prior convictions, asserting that "youth matters" in determining punishment. *Jones v. Mississippi*, 593 U.S. 98, 105 (2021).

Under the *Williams* framework, a court should ask: has the defendant been convicted of any felonies for dangerous conduct? If so, Congress can constitutionally disarm him. Although the *Williams* court at times put the analysis in terms of "dangerous persons" and whether a person "is dangerous," the analytical framework only asks about the dangerousness of their conduct which resulted in a felony conviction. *See Williams*, 113 F.4th at 662; *id.* at 660

10

(phrasing the inquiry as "whether a defendant's past convictions are dangerous"). While *Williams* noted "that courts may wish to consider information beyond criminal convictions when assessing a defendant's dangerousness," 113 F.4th at 658 n.12, the Sixth Circuit has declined to consider evidence that the present charge would lend to a showing of his dangerousness. *See United States v. Vaughn*, 2024 WL 4615853, at *2, n.2 (6th Cir. Oct. 30, 2024). Similar to *Williams*, in *Vaughn*, the defendant's prior "criminal convictions [were] sufficient to resolve this case." *Id*. The court again reached the same conclusion in *United States v. Morton*, No. 24-5022, --- F.4th ----; 2024 WL 5114316 (6th Cir. Dec. 16, 2024), where, in assessing dangerousness, the court considered only the defendant's criminal convictions, not the conduct underlying the present indictment. Here, the court concludes that it need not consider the circumstances that bring Brown to federal court on the present charges and relies on his prior convictions to evaluate dangerousness. The court can, however, consider the underlying facts of each conviction as set forth in the unobjected-to PSR from *United States v. Brown*, Case No. 22-cr-20659. *See United States v. Jennings*, 2024 WL 4560602 at *5 (considering information about the behavior underlying the defendant's convictions because it appeared in the "unobjected-to PSR" prepared prior to sentencing).

11

With that in mind, several considerations justify denying Brown's motion. First, he has multiple felony convictions, which, while not dispositive, weigh against a finding that Congress may not constitutionally disarm him. Second, Brown has multiple felony firearms convictions, which this court finds fall under *Williams*' second category of presumptively dangerous crimes. Courts have found that the laws that Brown was convicted of violating—unlawful possession of a firearm by a convicted felon and resisting law enforcement—"are like drug trafficking and burglary in that they pose a danger to the community and can increase the odds of a violent confrontation with others." *United States v. Bethea*, 2024 WL 4645395, at *5 (S.D. Ind. Oct. 31, 2024) (citing *Huddleston v. United States*, 415 U.S. 814, 824 (1974) ("[T]he ease with which firearms could be obtained contributed significantly to the prevalence of lawlessness and violent crime in the United States.")). While Brown contends that his criminal history lacks any violence, the facts show that with respect to his 2019 conviction, Brown fled police on foot and admitted possessing a firearm and violated his supervision for this offense with multiple gun possessions. Fleeing from police while in possession of a firearm involves conduct dangerous to the officers and the public. *United States v. Green*, 2024 WL 4469090, at *3 (E.D. Mich. Oct. 10, 2024) (conviction for fleeing and eluding involved danger to others.); *United States v. Smith*, 2024 WL 4242484, at *4 (E.D. Ky. Sept. 19, 2024) (past conduct, including

12

involvement in a shooting death, fleeing from police, and drug trafficking left no question of dangerousness.).

Further, in January of 2022, while on HYTA probation, Brown was arrested for illegally possessing a firearm. The factual circumstances leading to this arrest also demonstrate Brown's dangerousness. Police were dispatched to a residence in Flint for a domestic violence complaint involving a weapon. The 911 caller advised dispatch that Brown assaulted her daughter and that he was armed with a gun and was pointing it at people. *Id*. at ¶ 10. When police arrived on scene, Brown ran from the police. *Id*. at ¶ 11. The police subsequently arrested Brown a short distance away. While Brown emphasizes that his girlfriend denied he made any threats and that it was not proven beyond a reasonable doubt that he discharged the weapon, the police seized a magazine from Brown's pocket and short-barrel SKS-style semi-automatic rifle that he discarded while running from the police. *Id*. at ¶ 12, *see also United States v. Brown*, Case No. 22-cr-20659, ECF No. 17, Plea Agreement, PageID.37. The rifle had a spent casing in the chamber and both the barrel and stock of the rifle had been sawed off. *Id*. at ¶ 12. Again, fleeing the police while armed with the firearm presents a danger to the public and supports a finding of dangerousness. *See Green, supra*; *Smith, supra*; *see also United States v. Gray*, 2024 WL 5059144, at *2 (E.D. Mich. Dec. 10, 2024) (Defendant being caught with a dangerous weapon after fleeing from police on

13

foot and throwing down the weapon, supported a finding of dangerousness). While Brown was only charged with being a felon in possession of a firearm, the court may consider all the facts surrounding the offense, not just the fact of conviction. *See Morton*, 2024 WL 5114316, at *5 ("we are not confined to the fact of conviction alone, but may consider how an offense was committed.").

Finally, in August of 2022, Brown was arrested for possessing a .40 caliber pistol equipped with an extended magazine. Brown pleaded guilty to reckless use of a firearm. (*United States v. Brown*, Case No. 22-cr-20659, PSR, ECF No. 19, ¶ 32). While Defendant emphasizes that this charge involved mere possession of a firearm, *Williams* itself suggests that a prior felony firearm conviction, *by itself*, is sufficient to support a finding of dangerousness. *Williams*, 113 F.4th at 662 (Williams was convicted of aggravated robbery, attempted murder, and felon in possession of a firearm; the court held that "[t]he government could've pointed to *any one* of those convictions to demonstrate his dangerousness.") (emphasis added). Accordingly, this conviction properly serves to further demonstrate Brown's dangerousness.

Third, it is undisputed that Brown was on supervised release at the time he was alleged to have committed the crime that is the subject of this action. As a condition of his supervised release, Brown was prohibited from possessing a firearm. (*United States v. Brown*, Case No. 22-cr-20659, ECF No. 25, PageID.146,

14

standard condition no. 10).  In *United States v. Goins*, the Sixth Circuit found § 922(g)(1) constitutional as applied to the defendant because the nation's historical tradition of firearms regulation "demonstrates that Congress may lawfully disarm probationers like Goins, who (1) are under a firearm possession limitation as a condition of probation[2], (2) are under a relatively short probation sentence for a dangerous crime, and (3) whose repeated and recent actions show a likelihood of future dangerous conduct." *United States v. Goins*, 118 F.4th 794, 798 (6th Cir. 2024).  Possession of a firearm while on supervised release for another felony offense is a significant factor weighing against an as-applied challenge.  *United States v. Green*, at *3.  Brown's pattern of dangerous conduct (his repeated firearms violations while on probation and supervised release) easily demonstrates that his disarmament while on supervised release was lawful. *Goins*, 118 F.4th at 804-805 (disarming Goins temporarily as a condition of his probation, especially given his pattern of dangerous conduct, is "consistent with this Nation's historical tradition of firearm regulation" and thus, Congress could lawfully disarm him at the time he possessed the firearm) (citation omitted).

---

[2] The *Goins* holding also applies to supervised release: "While those on probation, parole, or supervised release may not permanently lose their Second Amendment right, a temporary deprivation that supports the state's interests in reducing recidivism and protecting the public may be appropriate."  *See Goins*, 118 F.4th at 804.

15

To the extent that either party suggests the court should evaluate, even by analogy, whether Brown's convictions constitute "crimes of violence" under the Sentencing Guidelines, the court rejects this approach.  *Williams* emphasizes that the inquiry it requires is not a strict "categorical inquiry" and that the dangerousness determination is fact specific and depends on the unique circumstances of the individual defendant.  *United States v. Norris*, 2024 WL 4816246, at *2 (N.D. Ohio Nov. 18, 2024) (quoting and citing *Williams*, 113 F.4th at 660).

As to Brown's youthful status, he does not offer any cases suggesting that youthfulness or brain development is a factor that should be considered in allowing a crime to be constitutionally charged, as opposed to a factor in the punishment meted.[3]  Notably, none of the offenses the court considers above are

---

[3] When *sentencing* a juvenile offender, the court must consider the so-called "*Miller* factors." *Miller v. Alabama*, 567 U.S. 460, 471 (2012).  These include: (1) chronological age and immaturity, impetuosity, and the failure to appreciate risks and consequences; (2) the offender's family and home environment; (3) circumstances of the offense, including the extent of participation in the criminal conduct and the effect of familial and peer pressures; (4) the effect of the offender's youth on the criminal-justice process, such as the offender's inability to comprehend a plea bargain; and (5) the possibility of rehabilitation. *Id.* at 477-478.  These "distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes." *Id.* at 472.

crimes Brown committed as a juvenile offender.[4] *United States v. Green*, No. 23-CR-20506, 2024 WL 4469090, at *4 (E.D. Mich. Oct. 10, 2024) ("The court is cognizant that an offense committed while still a minor is generally considered to have less probative value to determining the present characteristics of a person.") (citing Fed. R. Evid. 609 (limiting the admissibility of juvenile adjudications as probative of truthfulness); *Graham v. Florida*, 560 U.S. 48, 68 (2010) ("Juveniles are more capable of change than are adults, and their actions are less likely to be evidence of 'irretrievably depraved character' than are the actions of adults.")). Further, courts have declined to take judicial notice of facts from articles regarding brain development – like those cited in Brown's supplemental brief – for purposes of the *Williams* analysis. *See United States v. Norris*, 2024 WL 4816246, at *5. Instead, courts follow *Williams*' mandate to consider each individual's specific characteristics and the failure to offer any age or brain development evidence specific to the defendant is another reason to not consider such arguments when evaluating dangerousness. *Id*. Notably, while Brown's first adult criminal offense was committed when he was 17 years old, he continued to violate his probation over the next several years while he was aged 18 and 20. His

---

[4] At the time Brown committed the firearms offense in 2019, 17 years of age was considered an adult under Michigan criminal law. That age has since been raised to 18 years of age. *See* Mich. Comp. Laws § 600.606(1) (raising the age of criminal majority from 17 to 18 years old) (effective October 1, 2021).

other convictions occurred at age 20 and 21. Given Brown's repeated conduct relating to illegal firearms over the course of several years from age 17 to his present charges relating to an incident that occurred at age 22, the court is not convinced that his youth is a factor that can overcome the finding of dangerousness made above.

## V. CONCLUSION

The court finds that Brown has not rebutted the heavy presumption that his record includes convictions for crimes which posed a danger to others and the community and that § 922(g)(1) may constitutionally be applied to him. Therefore, the court **DENIES** Defendant's Motion to Dismiss Indictment under § 922(g)(1).

**SO ORDERED**.

Date: December 18, 2024         s/F. Kay Behm
                                F. Kay Behm
                                United States District Judge